1  VALINOTI, SPECTER & DITO, LLP
2  Ronald Specter, Esq. (SBN: 118417 – rspecter@specterlaw.com)
   Mark Anthony Rodriguez, Esq. (SBN: 132261 – markanthony@earthlink.net)
3  5000 Birch Street, Suite 3000
4  Newport Beach, CA  92660
   Phone: (949) 833-9400
5  Fax: (949) 833-9425
6  Attorneys for Plaintiff, PHILLIPS 66 COMPANY, a Delaware corporation

7

8                      UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| PHILLIPS 66 COMPANY, a Delaware Corporation, | **Case No.:** |
| Plaintiff, | **COMPLAINT FOR:** |
| v. | 1. **Negligence;** |
| PACIFIC GAS AND ELECTRIC CORPORATION, a California corporation; PACIFIC GAS AND ELECTRIC COMPANY, a California corporation; and DOES 1 through 100, inclusive, | 2. **Breach of Written Contract;**<br>3. **Inverse Condemnation;**<br>4. **Nuisance;**<br>5. **Unfair Competition Act (B&PC § 17200 et seq.)** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

22

        Plaintiff PHILLIPS 66 COMPANY, a Delaware corporation, brings this action for

damages against Defendants PACIFIC GAS AND ELECTRIC CORPORATION, a

California corporation, and PACIFIC GAS AND ELECTRIC COMPANY, a California

corporation.  Plaintiff alleges as follows:

---

                                1

                          **COMPLAINT**

I.    **PARTIES**

    A.    **Plaintiff**

    1.    Plaintiff PHILLIPS 66 COMPANY, a Delaware corporation ("Plaintiff"), is now, and at all times mentioned in this complaint was, a corporation organized and existing under the laws of the State of Delaware with its principal place of business and corporate headquarters in the City of Houston, County of Harris, State of Texas.

    B.    **Defendants**

    2.    Plaintiff is informed and believes and thereon alleges that defendant PACIFIC GAS AND ELECTRIC CORPORATION ("PG&E CORP."), is now, and at all times mentioned in this complaint, was a corporation organized and existing under the laws of the State of California.  At all times relevant, Defendant PG&E CORP. has transacted and continues to transact business throughout California, with its principal place of business and headquarters located in the City and County of San Francisco.

    3.    Plaintiff is further informed and believes and based thereon alleges that defendant PACIFIC GAS AND ELECTRIC COMPANY ("PG&E CO."), is a subsidiary corporation of PG&E CORP. and is now, and at all times mentioned in this complaint, was a corporation organized and existing under the laws of the State of California with its principal place of business and headquarters located in the City and County of San Francisco. PG&E CORP. and/or PG&E CO. provide natural gas and electric service to millions of customers in northern and central California, including Plaintiff.

    C.    **Other Defendants**

    4.    Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is indebted to Plaintiff as hereinafter alleged, and that Plaintiff's rights against such fictitiously named defendants arise from such indebtedness.  Each reference in this complaint to "defendant," "defendants," or a

**COMPLAINT**

specifically named defendant refers also to all defendants sued under fictitious names.

### D. Agency and Concert of Action

5. Plaintiff is informed and believes, and on such information and belief alleges that at all times herein mentioned, each of the defendants, including the defendants named as DOE herein, was the agent, servant, employee, partner, aider and abettor, co-conspirator and/or joint venturer of each of the remaining defendants and were at all times operating and acting within the purpose and scope of such agency, service, employment, partnership, conspiracy, alter ego and/or joint venture. Each defendant has rendered substantial assistance and encouragement to the other defendants, knowing that their conduct was wrongful and/or unlawful, and each defendant has ratified and approved the acts of each of the remain defendants.

## II. JURISDICTION

6. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1228(a) because the parties are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interest and costs. The Court has personal jurisdiction over Defendants PG&E CORP. and PG&E CO. because both of these entities are incorporated in California, and are therefore residents of California. Moreover, PG&E CORP. and PG&E CO. do and have done significant business in California, have engaged in acts or omissions within this State causing injury, and has otherwise established contacts with this State making the exercise of personal jurisdiction proper. Said Defendants' principal place of business is in the State of California.

## III. VENUE

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because the Defendants reside in this District and a substantial part of the events or omissions giving rise to the action occurred in this District.

## IV. INTRADISTRICT ASSIGNMENT

8. Pursuant to Civil L-R 3.2(c), intradistrict assignment in San Francisco is proper because a substantial part of the events or omissions which give rise to the claims

**COMPLAINT**

1    herein occurred in Contra Costa County.

2    **V.    FACTUAL BACKGROUND FOR THE CLAIMS ASSERTED**

3        9.    At all times relevant, Plaintiff owned and operated, or is the successor in

4    interest as owner and operator of, the Phillips 66 San Francisco Refinery located in

5    Rodeo, California (the "Refinery") in Contra Costa County.  The Refinery is an industrial

6    process plant where crude oil is processed and refined into different types of products.

7    The crude oil refining processes require sources of energy in the form of fuel, steam, and

8    electricity for various functions which include heating crude units and other process feed

9    streams; powering major compressors and large pumps; and powering pumps and fans in

10   air coolers with electric motors.  Maintaining a reliable and consistent flow of electrical

11   power is critical to the ongoing and successful operation of the Refinery, and Defendants

12   are aware of Plaintiff's needs in this regard.

13       10.    On or about July 20, 2010, on or about November 20, 2010, on or about

14   April 4, 2011, on or about July 23, 2011, on or about October 19, 2011, on or about May

15   18, 2012, as well as on other dates, Defendants, and each of them, caused electrical

16   power interruptions, caused interruptions of the consistent flow of electrical power,

17   caused power surges, caused a reduction in power and/or other impacts on the Refinery's

18   electrical power which interfered with the Refinery's ability to properly conduct business

19   and operate the Refinery as described herein. This substantially and detrimentally

20   impacted the crude oil refining processes at the Refinery and, at times, caused property

21   damage. The impacts on power as described herein impacted the ability of Plaintiff to

22   property operate a number of units, equipment, and facilities at the Refinery. In

23   particular, as a direct and proximate result of such surges of power/interruptions, multiple

24   processing units critical to the refining process including, without limitation, crude unit

25   200 and hydrocracking units 240 and 246, shut down (or were required to be shut down)

26   for extensive periods of time.  As a result thereof, the Refinery was unable to operate at

27   maximum capacity resulting in lost production of a substantial quantity of product

28   produced at the Refinery, including but not limited to gasoline and diesel fuel.

**COMPLAINT**

11.     PG&E CORP. and PG&E CO. are responsible for conducting regular inspections, repairs, and maintenance of their electrical lines and facilities, and ensuring any repairs comply with industry standards. Also, they are obligated to anticipate animals or birds impacting their equipment which could cause interruption of reliable power flow. Furthermore, Defendants are obligated to protect their lines and equipment and to protect animals or birds that they are aware cause problems with their customers, such as Plaintiff, receiving a reliable flow of power. Defendants, and each of them, utterly failed to comply with this duty. The provision of reliable electricity is essential to the Refinery's operations. Prior to the referenced power interruptions, Defendants knew and/or should have known that its electrical lines, facilities, including but not limited to transformers identified as the Oleum/Martinez 115 Feeder Line and the Christie and Moraga Substations were inadequate due to lack of capacity, repairs, maintenance, or otherwise to provide a reliable and consistent source of electrical power to the Refinery. Defendants also failed to properly inspect its electrical lines, implement an avian/animal protection plan, failed to inspect their facilities and transformers despite knowing that power outages, dips, and surges would substantially impair Plaintiff's ongoing operations at the Refinery and damage property and equipment at the Refinery.

12.     Shortly following the power interruptions, surges, etcetera identified in paragraph 10 above, Plaintiff presented detailed written claims to Defendants seeking compensation for its damages including property damage, lost revenue and profits and other related economic damages. Such claims were rejected by Defendants, thus necessitating the filing of this action by Plaintiff.  The claims asserted herein are timely inasmuch as Plaintiff and Defendants have previously entered into tolling agreements tolling all applicable statutes of limitation so that they could communicate at a business level regarding Plaintiff's claims and damages. Furthermore, Defendants, and each of them, are estopped from claiming that any of Plaintiff's claims or causes of action are untimely based on the tolling agreements and they are estopped from asserting a statute of limitation defense to any cause of actions based on Defendants' own representations

and conduct, which Plaintiff relied upon. Defendants made repeated representations that they were investigating Plaintiff's claims and further repeatedly communicated to Plaintiff that they needed more information from Plaintiff and their own internal personnel to help them analyze Plaintiff's claims. Defendant, through said representations, communications, and conduct, worked aggressively to deter Plaintiff from filing a lawsuit and moreover Defendants indicated that a delay in filing of the lawsuit would work to the parties' mutual benefit. Defendants should therefore be estopped from asserting any type of statute of limitations defense based on both the tolling agreements and their representations, communications, and conduct as identified herein.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### [Negligence – Property Damage, Economic Loss]

#### (Against All Defendants)

13.   Plaintiff realleges and incorporates herein by reference each of the paragraphs above as though fully set forth herein.

14.   Plaintiff is informed and believes and thereon alleges, that at the time of the subject electrical power interruptions referred to in paragraph 10 above, Defendants owned, operated, controlled, managed, leased, loaned, borrowed, repaired and/or maintained the electrical lines, facilities and transformers servicing the Refinery including, but not limited to, those facilities more particularly identified as the Oleum/Martinez 115 Feeder Line and the Christie and Moraga Substations.

15.   Defendants had a legal duty to Plaintiff, as a foreseeable industrial user of its electrical services and facilities, to exercise the utmost care and diligence in maintaining and operating said facilities.

16.   Defendants breached their duty by failing to exercise care in their operation and maintenance of said facilities including, but not limited to:

A.   Failing to maintain, repair, operate the facilities and properly

**COMPLAINT**

distribute electrical service and failing to comply with applicable federal and state laws related thereto as well as failure to maintain, repair, operate the facilities, and properly distribute with reasonable and due care;

        B.     Failing to properly repair, inspect, oversee, review, modify and anticipate or warn its customers, including Plaintiff, of potential electrical utility interruptions including those described in paragraph 10 above;

        C.     Failing to design, construct and operate its electrical distribution lines and facilities in a manner that allowed for adequate, reliable and consistent source of electrical power to the Refinery;

        D.     Failing to train and supervise employees in proper operational procedures in order to avoid utility interruptions as alleged herein;

        E.     Employing an obsolete, decrepit, unusable, unsafe and dangerous electrical power grid and infrastructure in delivering services to the public, including Plaintiff herein;

        F.     Failing to anticipate and prepare for power interruptions or surges caused by birds of animals impacting Defendants' wires, lines, and/or equipment; and

        G.     Failing to properly implement and maintain an avian or animal protection plan, which would have allowed for the continued flow of power to Plaintiff's Refinery.

    17.    Plaintiff is and was at all times relevant to this complaint a paying customer of Defendants and was completely blameless for the sudden and unexpected utility interruptions described in paragraph 10 above.

    18.    As a direct and proximate cause of Defendants' breach, Plaintiff has been damaged in amount according to proof, but in excess of $4,000,000.00 representing damages including, but not limited to the following:  Costs and expenses to restore operations at the Refinery after the shutdowns that were caused by the subject power interruptions; costs and expenses to repair the units, equipment and related property at the Refinery that were damaged as a result of the shutdowns; costs and expenses related to

**COMPLAINT**

overtime pay and related expenses directly related to Plaintiff's investigation of the shutdowns and efforts to reopen the Refinery and lost earnings and profits resulting from the decrease in production output and diminished capacity at the Refinery caused by the shutdowns.

## SECOND CAUSE OF ACTION

### [Breach of Tariff]

### (Against All Defendants)

19.     Plaintiff realleges and incorporates herein by reference each of the paragraphs above as though fully set forth herein.

20.     Plaintiff is informed and believes and thereon alleges that, at all relevant times, a written tariff exists between Plaintiff and Defendants pursuant to which Defendants agreed to deliver an adequate, reliable and consistent source of electrical power for purposes of operating Plaintiff's Refinery.

21.      Following the events described in paragraph 10, Plaintiff submitted timely written notice and claims to Defendants for compensation resulting from Defendants failure to provide electrical power service as agreed as provided in the applicable tariff agreements.

22.     The parties have entered into various tolling agreements tolling the statute of limitations and Defendants are estopped from relying on any statute of limitations defense based on Defendants' conduct and representations described herein.

23.     Defendants breached the tariff by, among other things, by failing to furnish and deliver a continuous and sufficient supply of electric energy to Plaintiff. Moreover, Defendants breached the tariff by, among other things, failing to exercise reasonable diligence through protecting against impact on their equipment by birds or animals, failing to implement an avian or animal protection plan and refusing to pay and compensate Plaintiff for damages suffered as a result of Defendants' breath of the tariff.

24.     Plaintiff has properly performed and complied with all terms and conditions under the tariff except for any terms and conditions which have been excused, prevented,

### COMPLAINT

1  waived, and/or released by Defendants.

2      25.    As a direct and proximate cause of Defendants' breach, Plaintiff has been

3  damaged in amount according to proof, but in excess of $4,000,000.00, representing

4  damage to property, lost revenue, and lost profits.

5  **THIRD CAUSE OF ACTION**

6  **[Inverse Condemnation]**

7  **(Against All Defendants)**

8      26.    Plaintiff realleges and incorporates herein by reference each of the

9  paragraphs above as though fully set forth herein.

10      27.    In addition to serving the Refinery, Defendants transmit electric power

11  through its facilities to members of the public in the Rodeo area and for the benefit and

12  use of the public in such area.

13      28.    Defendants' operation of its facilities and transmission of electric power for

14  public use through these facilities was a substantial cause of physical damage sustained

15  by Plaintiff at the Refinery due to the power interruptions described above.

16      29.    As a result thereof, Plaintiff's property was taken or damaged by Defendants

17  for a public use.  Accordingly, Plaintiff is entitled to just compensation for such damage

18  under Article I, Section 19 of the California constitution in an amount to be ascertained.

19  **FOURTH CAUSE OF ACTION**

20  **[Nuisance]**

21  **(Against All Defendants)**

22      30.    Plaintiff realleges and incorporates herein by reference each of the

23  paragraphs above as though fully set forth herein.

24      31.    As set out above, Defendants had a legal duty to Plaintiff.

25      32.    Defendants caused or allowed to occur those power interruptions and surges

26  more particularly described in paragraph 10 of this complaint. This constitutes the

27  creation of a nuisance, both private and public, within the meaning of the *California Civil*

28  *Code*.

9

**COMPLAINT**

33.     As a proximate result of the statutory violations and maintenance of the nuisance, Plaintiff suffered injury to its property, and Plaintiff has been damaged in an amount according to proof.

### FIFTH CAUSE OF ACTION

### [Unfair Competition – Business & Professions Code §§ 17200]

### (Against All Defendants)

34.     Plaintiff realleges and incorporates herein by reference each of the paragraphs above as though fully set forth herein.

35.     Defendants violated *Business & Professions Code* §§ 17200 et seq. by those acts set out in Paragraph 10 above.  Additionally, Defendants violated numerous orders and reliability standards, including those enacted pursuant to the Federal Power Act.

36.     Plaintiff has been damaged by Defendants violation of the California Unfair Competition Act and seek restitutionary relief.

### PRAYER FOR RELIEF

WHEREFORE, PHILLIPS 66 COMPANY prays for judgment against Defendants as follows:

1.     For damages according to proof;

2.     For costs of suit incurred herein;

3.     For restitutionary relief pursuant to *Business & Professions Code* §§ 17200 et seq.

3.     For interest as provided by law; and

4.     For such other and further relief as the court may deem just and proper.

Dated: July 22, 2015                          VALINOTI, SPECTER & DITO, LLP

Ronald Specter, Esq.
Attorney for Plaintiff

10

**COMPLAINT**

1

## JURY TRIAL DEMAND

2

Plaintiff herewith demands trial by jury.

3

4

Dated: July 22, 2015                                    VALINOTI, SPECTER & DITO, LLP

5

6

7                                                        Ronald Specter, Esq.

8                                                        Attorney for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT**